IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOMAS HA, an individual,

        Plaintiff,

        v.

DR. GARTH GULICK; DR. ADAM REYNOLDS; and JOHN DOES 1-20,

        Defendants.

Case No. 2:20-cv-01785-MC

OPINION AND ORDER

**MCSHANE, Judge**:

      Plaintiff Thomas Ha brings this state medical malpractice action against Defendant Adam Reynolds, alleging that Plaintiff suffered a near total loss of vision in his right eye as a result of a surgical procedure performed by Defendant. Pl.'s Compl. ¶ 17, ECF No. 1. Defendant, a resident of Idaho, filed a motion to dismiss based on lack of personal jurisdiction, claiming that he lacks necessary minimum contacts with Oregon.[1] Def.'s Mot. Dismiss 1, ECF No. 12. This Court allowed Plaintiff to conduct limited discovery in order to respond to the motion. Order Granting Pl.'s Mot., ECF No. 19. For the reasons stated below, Defendant's Motion to Dismiss (ECF No. 12) is GRANTED.

---

[1] Dr. Gulick filed an answer, ECF No. 16, and does not contest this Court's jurisdiction over him.

1 – OPINION AND ORDER

## BACKGROUND[2]

Plaintiff Thomas Ha, a resident of Oregon, was an inmate at the Snake River Correctional Institution ("SRCI") in Ontario, Oregon. Pl.'s Compl. ¶ 3. Prior to the instant action, Plaintiff had received glaucoma-related surgery several times from eye doctors at the Oregon Health and Science University ("OHSU"); however, against Plaintiff's wishes, the Oregon Department of Corrections ("ODOC") hired Defendant to perform the surgery instead. *Id.* On October 15, 2018, Plaintiff was transported to the Eagle Eye Surgery and Laser Center in Meridian, Idaho, where Defendant performed the procedure. *Id.* ¶ 9. After the procedure, Plaintiff was sent back to SRCI and was told he would regain vision within 72 hours. *Id.*

Plaintiff began to experience bleeding, swelling, and pain in his right eye as early as October 16, 2018. *Id.* ¶ 10. On October 22, 2018, at the recommendation of an SRCI ophthalmologist, Plaintiff was transported back to Meridian, Idaho, for a follow up examination with Defendant. *Id.* ¶ 12.

In January 2019, Plaintiff was moved from SRCI to the Oregon State Penitentiary and returned to see the medical team at OHSU shortly thereafter. *Id.* ¶ 17. The medical team told Plaintiff that the loss of vision in his right eye was a result of the surgery performed by Defendant and the subsequent aftercare. *Id.* Plaintiff was told that his vision will likely not return. *Id.*

---

[2] At the motion to dismiss stage, this Court takes all of Plaintiff's allegations of material fact as true. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).

2 – OPINION AND ORDER

## DISCUSSION

Because there is no applicable federal statute governing personal jurisdiction, the Court looks to Oregon law.³ Oregon law authorizes personal jurisdiction to the fullest extent permitted by the Due Process Clause of the U.S. Constitution. *See* Or. R. Civ. P. 4L. To establish personal jurisdiction, a plaintiff must show that a defendant had "minimum contacts" with Oregon, such that the exercise of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Although in some limited circumstances courts consider the respective interests of the forum state and the plaintiff, the requirement of "minimum contacts" exists primarily to "protect[] the defendant from the burdens of litigating in a distant or inconvenient forum." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Therefore, for an exercise of jurisdiction to be proper, "minimum contacts" must "proximately result from actions by the defendant *himself*"—not the "unilateral activity of [a plaintiff] or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Due process also demands that a defendant's contact with the forum state be *purposeful*, and not merely "random, fortuitous, or attenuated." *Burger King Corp.*, 471 U.S. at 475–76.

A state can have personal jurisdiction over a defendant that is either specific or general, depending on the nature of the claim and the defendant's contacts with that state. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); *Helicopteros*

---

³ The state law that applies is determined by the state in which the district court sits. *See* Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).

3 – OPINION AND ORDER

*Nacionales de Colombia*, 466 U.S. at 414. General jurisdiction allows a defendant to be "haled into court in the forum state to answer for any of [their] activities anywhere in the world," even if the cause of action does not arise from the defendant's contacts with the forum state. *Schwarzenegger*, 374 F.3d at 801; *Helicopteros Nacionales de Colombia*, 466 U.S. at 409. A finding of general jurisdiction requires a defendant's contacts with the forum state be so "continuous and systematic" as to "'approximate physical presence' in the forum state." *Schwarzenegger*, 374 F.3d at 802 (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). Far less extensive contacts are required for a finding of specific jurisdiction, which allows a defendant to be called to the forum state to answer *only* for claims that are related to, or that arise from, a defendant's contacts with the forum state. *Id.* at 801–02.

Because Plaintiff argues only that the state of Oregon has specific jurisdiction over Defendant Reynolds, the Court need not address the issue of general jurisdiction. Pl.'s Resp. 4, ECF No. 23. Courts have established a three-prong test for analyzing whether specific jurisdiction over a defendant is proper:

> 1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> 2) The claim must be one which arises out of or relates to the defendant's forum-related activities;
>
> 3) The exercise of jurisdiction must comport with fair play and substantial justice.

*Schwarzenegger*, 374 F.3d at 802.

The claim indisputably "arises from" Defendant's forum-related activities. The instant action is a medical malpractice suit arising from Defendant's treatment of Plaintiff—an Oregon resident—and the subsequent harm resulting from the treatment, which was felt by Plaintiff in

4 – OPINION AND ORDER

Oregon. Pl.'s Compl. ¶ 9. Accordingly, the analysis rests on the first and third prongs. The first prong is commonly summarized by the phrase "purposeful availment," which is understood to include the requirements of both availment and direction. *Schwarzenegger*, 374 F.3d at 802. In order to satisfy the "purposeful availment" prong, a plaintiff must establish that the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (2002) (interpreting the effects test set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984)). Additionally, the Supreme Court has distinguished mere "untargeted negligence" from intentional acts that are "expressly aimed at [the forum state]." 465 U.S. at 789.

   The Court finds that Plaintiff has not satisfied the "purposeful availment" test. In treating Plaintiff, Defendant committed an intentional act—the harm of which he knew would likely be suffered by Plaintiff in Oregon. However, this act was not "expressly aimed at the forum state." Plaintiff relies on *Wright v. Yackley*, where the Ninth Circuit addressed whether an Idaho court's exercise of specific personal jurisdiction was proper over a South Dakota defendant—a medical doctor who had been accused of malpractice after treating Plaintiff wholly in South Dakota. 459 F.2d 287 (1972). The plaintiff had been a South Dakota resident when she was treated by defendant, but she had since moved to Idaho. *Id*. at 288. After moving to Idaho, the plaintiff attempted to refill her prescriptions and was told by the pharmacy that they required confirmation from defendant. *Id.* The defendant provided copies of the original prescriptions to the plaintiff, who then filed suit in an Idaho court alleging she had been injured by the medications that the defendant prescribed. *Id.* Although the consequences of the defendant's treatment were felt by the plaintiff in Idaho and were foreseeable, the *Wright* court distinguished

5 – OPINION AND ORDER

the case from one "involving voluntary, interstate economic activity [that] is directed at [the forum state] in order to benefit from effects sought in [that state]." *Id.* at 290. The court further indicated that the medical services provided by the defendant in his home state were not "comparable to acts performed by a nonresident for the very purpose of having their consequences felt in the forum state," because "no benefit was to be derived by [the defendant] from his single, unsolicited connection with Idaho." *Id.*; *id.* at fn. 4. The acts of diagnosis and treatment were performed in South Dakota and were irrelevant to any relationship with Idaho, and the fact that the plaintiff happened to reside in Idaho was "incidental to the benefits provided by the defendant in [South Dakota]." *Id.* at 290. Therefore, the court held that the defendant did not "purposefully avail" himself of the privilege of conducting business in Idaho, and personal jurisdiction over the defendant was therefore improper. *Id.* at 290-91.

The instant case is functionally identical to *Wright*. Plaintiff argues that his case is distinguishable because the *Wright* plaintiff's harm was "remote in time from the alleged tortious medical treatment," and because the *Wright* defendant "had no warning that any harm would take place in another state." Pl.'s Resp. 6. However, neither of these factors were remotely dispositive in the *Wright* decision. In fact, the *Wright* court indicated that they would similarly find no "purposeful availment" if the defendant had treated an out-of-state patient "with the knowledge of [their] imminent return to [their state of residence] and that his treatment thus may cause effects there." *Wright*, 459 F.2d at 289. Accordingly, it makes no difference that Defendant was "extremely aware" that Plaintiff would return to Oregon and that his treatment may cause effects there. As was the case in *Wright*, Defendant treated Plaintiff wholly within his home state, Def.'s Mot. Ex. 1, ¶ 8, and did not do so "for the very purpose of having [the treatment's] consequences felt [in Oregon]," *Wright*, 459 F.2d at 290. The fact that Plaintiff was a resident of

6 – OPINION AND ORDER

Oregon and felt the effects of the treatment there was irrelevant to Defendant's decision to treat him. *Wright*, 459 F.2d at 290.

Although Defendant shares ownership of a property in Oregon—unrelated to the instant action—that he uses solely for vacation purposes, he is a resident of Idaho and is domiciled there. Def.'s Mot. Ex. 1, ¶ 2. Defendant's practice is located in Idaho, and he has never treated any patients in Oregon, Plaintiff included. *Id.* ¶¶ 7–8. Defendant has treated other individuals who, like Plaintiff, were incarcerated in Oregon at the time of their treatment; however, the record makes it clear that these were three sporadic interactions spread out over 15 years, not indications that Defendant has a continuous, systematic habit of seeking the patronage of Oregon residents. Chavez Decl. Ex. 2, 3, ECF No. 24. Defendant neither advertises in Oregon nor possesses a license to practice medicine in Oregon. Def.'s Mot. Ex. 1, ¶¶ 3, 6. Defendant is not an employee of the ODOC, and he has no contract with the ODOC to provide medical care to their inmates. Def.'s Mot. Ex. 1, ¶¶ 4–5. Instead, Defendant's treatment of Plaintiff arose solely from the ODOC's unilateral decision to refer Plaintiff to Defendant's care. Chavez Decl. Ex. 2, 1. Defendant was not involved in the referral or selection process—nor does he know why the ODOC selected him specifically. *Id*. In fact, Defendant's *only* affirmative act—other than the procedure itself—was his acceptance of Plaintiff as a patient after being approached by the ODOC medical staff.

Given the above, Defendant's treatment of Plaintiff was not "expressly aimed" at Oregon, and it follows that he did not "purposefully avail" himself of the privileges and benefits of conducting business in Oregon. *See Wright*, 459 F.2d at 289 (finding no personal jurisdiction when doctor treated Plaintiff outside the forum state despite being on notice that any harm from such treatment would be felt in the forum state).

7 – OPINION AND ORDER

The Court further finds that an exercise of personal jurisdiction in the instant case would blatantly offend "traditional notions of fair play and substantial justice." It would certainly be unfair to force Defendant to defend himself against a claim in Oregon simply because he was asked to treat an Oregon resident and agreed to do so—especially when he has not availed himself of Oregon's "privileges and benefits" in any way. Additionally, a finding of personal jurisdiction would have a chilling effect on medical professionals everywhere regarding their willingness to treat out-of-state patients. The Ninth Circuit has addressed the negative impact that such a finding would have on the public's accessibility to medical care:

> Medical services in particular should not be proscribed by the doctor's concerns as to where the patient may carry the consequences of his treatment and in what distant lands he may be called upon to defend it. The traveling public would be ill served were the treatment of local doctors confined to so much aspirin as would get the patient into the next state. The scope of medical treatment should be defined by the patient's needs, as diagnosed by the doctor, rather than by geography.

*Id.* at 290.

Clearly, a finding of jurisdiction that would functionally prevent individuals from receiving medical care in any state but their own cannot be said to comport with "traditional notions of fair play and substantial justice."

Defendant is not responsible for Plaintiff's incarceration or lack of free will, or for the fact that the ODOC unilaterally decided to refer Plaintiff to Defendant for medical care. Nor should Defendant be unduly burdened simply for agreeing to treat an individual who he knew was a resident of another state. These are exactly the kind of third-party considerations that have been deemed secondary in this analysis. Ultimately, the Court must look to Defendant's actions and determine whether there exist purposeful acts—expressly aimed at Oregon—that would make Oregon's exercise of jurisdiction proper. In this case, the Court finds no such acts.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 12) for lack of jurisdiction is GRANTED. Because the Court lacks personal jurisdiction over Dr. Reynolds, the claims against him are DISMISSED, without prejudice. The remaining parties shall file a joint status report within 30 days.

IT IS SO ORDERED.

DATED this 19th day of October 2021.

                                                          /s/ Michael J. McShane
                                                             Michael McShane
                                             United States District Judge